IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JURRIAAN STROBOS**
1023 North Noyes Drive
Silver Spring, MD  20910

        Plaintiff,

      v.

**RxBio, INC.**
1325 Sunset Drive
Johnson City, TN  37602-5389

        Defendant.

Civil Action No. _____

**JURY DEMAND**

## COMPLAINT

Plaintiff, Jurriaan Strobos, by counsel, as and for his complaint against Defendant, RxBio, Inc. ("RxBio" or the "Company"), states and alleges as follows:

## I.
## INTRODUCTION

1.    Jurriaan T. Strobos, M.D., J.D., is a trained medical doctor and licensed attorney with expertise in premarket review and approval of drugs, biological products, medical devices, and health claims for foods by the U.S. Food and Drug Administration and comparable international regulatory bodies.

2.    In or about 2009, RxBio hired Dr. Strobos as its Vice President of Clinical Research and Regulatory Affairs and entered into an employment agreement with him, which was effective upon funding acquired in October 2011, and which was later amended.

3.    In 2015, his actual and contractual role in the company was substantially circumscribed and Dr. Strobos opted to terminate his employment "for Good Reason," as permitted by his contract with RxBio.

4.      RxBio, however, has failed to meet its contractual obligations and owes Dr.

Strobos substantial sums in unpaid salary, expenses, and severance.  Dr. Strobos brings this

action to recover those amounts.

## II.
## PARTIES AND JURISDICTION

5.      Dr. Strobos is citizen and resident of the State of Maryland, residing at 1023

North Noyes Drive, Silver Spring, Maryland.  At all relevant times until August 16, 2015, Dr.

Strobos was employed by RxBio, working in the District of Columbia.

6.      RxBio is a Tennessee corporation with its principal office located at 1325 Sunset

Drive, Johnson City, Tennessee.  The Company is an early stage, start-up bio-pharmaceutical

company whose business is to develop or market small molecule pharmaceuticals for treatment

of acute radiation syndrome or protection of the small intestine/gut from radiation, chemotherapy

agents, toxic agents such as cholera toxin or agents for the treatment of severe diarrhea; or, to

develop and market pharmaceuticals using phospholipid growth factors.

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is

complete diversity of citizenship between the parties.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to the claims set forth in this Complaint

occurred in this judicial district, RxBio transacts business in the District of Columbia, and Dr.

Strobos' employment was predicated on an agreement to work at offices leased by RxBio in the

District of Columbia.

### III.
### FACTUAL BACKGROUND

**A.    The 2009 Employment Agreement**

9.    On or about October 31, 2009, RxBio and Dr. Strobos executed an employment agreement that would become effective upon RxBio obtaining necessary funding.

10.    By October 2011, RxBio had acquired the necessary funding and subsequently Dr. Strobos began working for RxBio as the Vice President of Clinical Research and Regulatory Affairs.

11.    As Vice President of Clinical Research and Regulatory Affairs, RxBio vested Dr. Strobos with overall responsibility for, among other things:

    a.    All Food and Drug Administration related matters, including all submissions, development of written clinical and regulatory development plans and related documents for the Company's products for filing with the FDA and other regulatory agencies;

    b.    Coordinating the planning for and participating in meetings with the FDA;

    c.    Coordinating the drafting and submission of all FDA filings;

    d.    Facilitating the Company's general compliance with the FDA;

    e.    Overseeing the Company's GLP compliance regarding the production of test articles for clinical trials;

    f.    Planning, managing, and assisting in the development and the design of clinical studies including statistical analysis;

    g.    Developing data collection instruments and documents and preparing and supervising clinical research reports for publication in appropriate per-reviewed journals; and,

      h.      Recruiting and coordinating all interaction with clinical investigators and regulators, and overall responsibility for recruiting, training, and supervising the Company's in-house regulatory staff, as well as clinical and regulatory consultants.

12.     Dr. Strobos reported directly to RxBio's President and its Board of Directors.

13.     Pursuant to the 2009 Agreement, RxBio agreed to pay Dr. Strobos a minimum annual base salary of $250,000, payable monthly in arrears and a minimum annual bonus of at least $100,000.

14.     Pursuant to the 2009 Agreement, RxBio agreed to reimburse Dr. Strobos for all reasonable, ordinary and necessary documented out-of-pocket expenses incurred in the course of the performance of his duties and responsibilities.

15.     Pursuant to the 2009 Agreement, RxBio agreed to pay Dr. Strobos a severance if he terminated his employment "for Good Reason."

16.     Pursuant to the 2009 Agreement, the Severance Payment is equal to "the sum of one times the highest rate of Executive's annual Base Compensation in effect during the three years preceding the Effective Termination" plus one times the highest annual bonus received by the executive in the three years preceding the Effective Date of Termination, plus a prorated bonus for the year in which the termination occurs determined by annualizing the most recent bonus and the prorating that bonus based on the days worked for that fiscal year.

17.     Termination for "Good Reason" is defined by the 2009 Agreement, in relevant part, as termination by the Executive for:

      a.      The Company's material breach of the salary and benefit obligations under the 2009 Agreement, without cure; or

    b.      A change in the Executive's reporting relationships or a reduction in duties without his prior written consent.

18.     In addition to his Severance Payment, under the 2009 Agreement all of Dr. Strobos's unvested stock options were to vest on the sixtieth (60th) day after separation from service.

19.     Dr. Strobos was also entitled under the 2009 Agreement to a single lump sum amount equal to twenty-four times the applicable monthly COBRA premium for Executive and his dependents.  In the event of any dispute regarding Executive's right to severance, RxBio agreed pursuant to the 2009 Agreement to provide health care benefits until the earlier of twenty-four (24) months or until such dispute is resolved.

**B.**    **The 2011 Employment Agreement**

20.     Subsequently, Dr. Strobos and RxBio entered into a new employment agreement effective October 1, 2011 (the "2011 Agreement").

21.     Pursuant to the 2011 Agreement, Dr. Strobos retained overall responsibility for, among other things:

    a.      All Food and Drug Administration related matters, including all submissions, development of written regulatory development plans and related documents for the Company's products for filing with the FDA and other federal agencies;

    b.      Coordinating, planning for and participation in meetings with the FDA;

    c.      Coordinating the drafting and submission of nonclinical programs and all FDA filings;

    d.      Facilitating the Company's general compliance with the FDA;

      e.      Overseeing the Company's GLP compliance regarding the production of test articles for clinical and nonclinical trials;

      f.      Planning, managing, and assisting in the development and the design of nonclinical and clinical studies including statistical analysis;

      g.      Developing data collection instruments and documents and preparing and supervising research protocols and reports; and

      h.      Directing and supervising such other employees as may be responsible for assisting in the foregoing efforts.

22.      Pursuant to the 2011 Agreement, Dr. Strobos reported directly to RxBio's Chief Executive Officer.

23.      Pursuant to the 2011 Agreement, RxBio agreed to pay Dr. Strobos a minimum annual base salary of $385,000 per year, payable no less frequently than monthly.

24.      Pursuant to the 2011 Agreement, RxBio agreed to reimburse Dr. Strobos "for all reasonable ordinary, necessary, and documents out-of-pocket expenses properly incurred in the course of the performance of EMPLOYEE's duties and responsibilities pursuant to this Agreement, and consistent with the EMPLOYER's policies with respect to travel, entertainment and miscellaneous expenses and the requirements with respect to the reporting of such expenses."

25.      Pursuant to the 2011 Agreement, RxBio agreed to pay Dr. Strobos severance equal to the sum of one year's base salary and the prior year's bonus if he is terminated without Cause or resigns "for Good Reason," as defined by the 2011 Agreement.

26.      Termination for "Good Reason" is defined by the 2011 Agreement, in relevant part, as termination by the Executive for:

a.     the Company's material breach of the salary and benefit obligations under

the 2011 Agreement; or

b.     a material change in the Dr. Strobos's reporting relationships or a material

reduction in duties without Dr. Strobos's prior written consent.

**C.     RxBio Breached its Contractual Obligations**

27.     As of June 30, 2015, RxBio changed Dr. Strobos's role with the company and, among other things, divested him of responsibility for communication with federal agencies, development and submission of reports to federal agencies, and direction and supervision of employees assisting with those efforts.

28.     RxBio effectively demoted Dr. Strobos and the changes in his responsibility constituted a material reduction in Dr. Strobos's duties and responsibilities.

29.     On July 17, 2015, Dr. Strobos provided written notice to Dr. W. Shannon McCool that he was exercising his option to terminate his employment with RxBio for Good Reason, effective August 16, 2015.

30.     In a communication dated August 11, 2015, Dr. McCool, responded on behalf of RxBio to Dr. Strobos's July 17 notification letter and accepted Dr. Strobos's resignation.

31.     On September 14, 2015, Dr. McCool wrote to Dr. Strobos and acknowledged that RxBio owed Dr. Strobos $16,288.89 in unreimbursed, out-of-pocket expenses and that the company planned to reimburse Dr. Strobos at a rate of $1,000 per month.

32.     Since that date, RxBio has reimbursed Dr. Strobos a total of $3,213.11 which leaves a balance owed of $13,075.78 as of the date of filing of this complaint.

33.     On September 14, 2015, Dr. McCool also acknowledged that RxBio owes Dr. Strobos $57,333.36 in unpaid salary for 2014, and $136,227.83 in unpaid salary for 2015, for a

total of $193,561.19.  RxBio has not paid any of these amounts to Dr. Strobos and, instead, states its intention to pay him "once it is financially capable to do so."

34.      On September 14, 2015, Dr. McCool also acknowledged that RxBio owes Dr. Strobos $26,950 in unpaid bonuses for 2013, and $42,950.01 in unpaid bonuses for 2014, for a total of $69,900.01 in unpaid bonuses.  RxBio has not paid any of these amounts to Dr. Strobos and, instead, states its intention to pay him "once it is financially capable to do so."

35.      In addition to the amounts totaling $276,536.98 in unpaid expenses, salary and bonuses, RxBio owes Dr. Strobos not less than $368,866.73 of base salary, plus an amount equal to the 2014 accrued bonus of $42,950.01, in severance payments.

36.      In total, RxBio owes Dr. Strobos not less than $688,353.72, exclusive of interest and attorneys' fees, which amount remains unpaid.

**COUNT I**
**(BREACH OF CONTRACT)**

37.      Dr. Strobos re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 36 above.

38.      Dr. Strobos and RxBio entered into an Employment Agreement effective October 2011.

39.      Dr. Strobos performed his duties and obligations under that Agreement.

40.      RxBio has materially breached the Agreement by, among other things, failing to pay Dr. Strobos the contracted-for salary, failing to pay Dr. Strobos on a timely basis, failing to reimburse Dr. Strobos his out-of-pocket expenses, and failing to pay Dr. Strobos his severance.

41.      As a result of RxBio's breaches, Dr. Strobos has been and continues to suffer damages in an amount not less than $688,353.72, not including interest and attorneys' fees.

## COUNT II
### (VIOLATION OF D.C. WAGE PAYMENT AND
### COLLECTION LAW – D.C. Code 32-1301, *et seq.*)

42.     Dr. Strobos re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 41 above.

43.     At all relevant times, until August 16, 2015, Dr. Strobos was an employee of RxBio.

44.     RxBio failed to pay Dr. Strobos all wages earned on a bi-monthly basis.  RxBio has acknowledged that amounts are due and owing as unpaid wages for 2013, 2014, and 2015.

45.     To date, months after Dr. Strobos's separation from the Company, RxBio remains in arrears in payment of wages that are due and owing, including $193,561.19 in wages and $69,900.01 in accrued bonuses that RxBio acknowledges is due and owing.

46.     RxBio's failure to pay wages as alleged in this Count violates 32 D.C. Code § 1301, *et seq.*

47.     As a result of RxBio's wrongdoing as alleged herein, Dr. Strobos has suffered damages in an amount not less than $688,353.72, not including interest and attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jurriaan Strobos, M.D., J.D., respectfully prays that judgment be entered in his favor and against Defendant RxBio for compensatory damages in an amount to be determined at trial, but not less than $688,353.72, plus pre-judgment and post-judgment interest thereon, costs and fees, and that the Court award to Plaintiff, Jurriaan Strobos, M.D., J.D., such other and further relief as the Court deems to be just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.


Dated: November 12, 2015

Allen V. Farber (#912865)
Mark H.M. Sosnowsky (#979960)
Drinker Biddle & Reath LLP
1500 K St., N.W., Suite 1100
Washington, D.C. 20005
Phone: (202) 230-5154
Fax: (202) 230-5354
allen.farber@dbr.com
mark.sosnowsky@dbr.com

*Attorneys for Plaintiff,*
*Jurriaan Strobos, M.D., J.D.*