UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JURRIAAN STROBOS,<br><br>   Plaintiff,<br><br>     v.<br><br>RXBIO, INC.,<br><br>   Defendant. | Civil Action No.  15-1994 (JEB) |

MEMORANDUM OPINION AND ORDER

   Plaintiff Jurriaan Strobos claims that Defendant RxBio, Inc. owes him nearly $700,000 in unpaid salary, expenses, and severance pay.  See ECF No. 1 (Complaint), ¶¶ 36, 41.  Defendant, in turn, counterclaims that it is Strobos – not the Company – who has violated their employment agreement by, *inter alia*, retaining certain documents that he should have returned after resigning from his post.  See ECF No. 6 (Answer) at 24, 33-34.  Rather than await a ruling on the merits of these claims, both sides now move for preliminary-injunctive relief.  See ECF Nos. 25 (Motion), 32 (Cross-Motion).  Having held a hearing on December 16, 2016, at which the Court announced that it would deny both Motions, it now explains in more detail why neither side has shown a likelihood of irreparable harm.

**I. Legal Standard**

   "[I]njunctive relief" is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

the public interest." Id. at 20.  Before the Supreme Court's decision in Winter, courts weighed the preliminary-injunction factors on a sliding scale, allowing a weak showing on one to be overcome by a strong showing on another.  See, e.g., Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360-61 (D.C. Cir. 1999).  This Circuit, however, has suggested, without deciding, that Winter should be read to abandon the sliding-scale analysis in favor of a "more demanding burden" requiring plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm.  See Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1292 (D.C. Cir. 2009)).  Whether a sliding-scale analysis still exists or not, courts in our Circuit have held, both before and after Winter, that "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors."  Dodd v. Fleming, 223 F. Supp. 2d 15, 20 (D.D.C. 2002) (citing CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)); see Safari Club Int'l v. Jewell, 47 F. Supp. 29, 32 n.5 (D.D.C. 2014).

**II.    Analysis**

As neither party here has shown that its asserted injuries form a basis for preliminary relief, the Court need only discuss this factor and will not engage in an analysis of the merits of the litigants' claims.  It considers each side's Motion in turn.

   A.  Plaintiff's Motion

Strobos seeks an injunction directing Defendant to preserve certain funds that it was recently paid on a government contract so that the Company will be able to pay a future judgment for his deferred wages.  See Mot. 2.  In the absence of such relief, he maintains that he will lose out on the sums he is due because RxBio is on the verge of insolvency and may transfer

the funds – owed to him under his employment contract – to other creditors. Id. The likelihood he may never obtain his money, he believes, constitutes irreparable injury.

The law of this Circuit, however, is clear that "[a]n injunction freezing assets is only permissible when a party has demonstrated an equitable claim to the assets." Ellipso, Inc. v. Mann, 480 F.3d 1153, 1160 (D.C. Cir. 2007) (emphasis added) (citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 310, 332-33 (1999)); see also United States ex rel. Rahman v. Oncology Assos., P.C., 198 F.3d 489, 497 (4th Cir. 1999) ("[W]e must begin with an analysis of the claims in [this] suit to determine whether they seek cognizable relief in equity involving assets of the defendant."). The Supreme Court in Grupo Mexicano previously indicated that federal "courts cannot issue preliminary injunctions based solely on the solvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages," rather than equitable relief. Vis Vires Grp. v. Endonovo Therapeutics, Inc., 149 F. Supp. 3d 376, 393 (E.D.N.Y. 2016) (citing Grupo Mexicano and collecting cases); Oak Leaf Outdoors, Inc. v. Double Dragon Int'l, Inc., 812 F. Supp. 2d 944, 947 (C.D. Ill. 2011) ("As Grupo Mexicano makes clear, this Court does not have the authority to issue a preliminary injunction preventing Oak Leaf from disposing of its assets – in the form of a constructive trust, escrow, asset freeze, or some other similar relief – pending adjudication of DDI's contract claim for money damages.").

Plaintiff's Complaint here has asserted no equitable claim to the money he now seeks to encumber. It instead asserts a right only to damages under a breach-of-contract theory or, alternatively, under a District of Columbia law that prevents the dilatory payment of wages. See Compl., ¶¶ 37-41 (Breach of Contract), ¶¶ 42-47 (D.C. Wage Payment and Collection Law). Neither of these claims sounds in equity. As a result, Grupo Mexicano and the law of this

Circuit foreclose issuance of the preliminary injunction he seeks. See 527 U.S. at 332 (holding federal courts lack authority to freeze assets in action for money damages where no lien or equitable interest in assets is claimed).

Perhaps recognizing the writing on the wall, Plaintiff nevertheless seeks to advance two arguments in his Reply to distinguish his case from the holding in Grupo Mexicano. He first asserts, in conclusory fashion, that "[u]nder RxBio's theory of the [employment] agreement . . . [,] the Court can find that [he] has asserted an equitable lien on the money at issue." ECF No. 34 (Reply) at 9. In other words, by his Reply, he requests that the Court transform this preliminary-injunction Motion into one for an equitable lien on the Company's monetary assets. Id. This entreaty, though, comes too late. See Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.") (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 196 (D.C. Cir. 1992)). Strobos, moreover, nowhere describes what would be legally required for such a lien, nor does he make any effort to argue that he qualifies for one on the facts of this case. See Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (explaining courts need not construct party's legal arguments, for "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived"). His first salvo thus fails to develop a viable argument to circumvent Grupo Mexicano.

Strobos next asserts, again in rather conclusory fashion, that his second cause of action under the D.C. Wage Payment and Collection Law "specifically provides the Court with the ability to grant" the preliminary-injunctive relief that he seeks. See Reply at 9-10. In support, he cites to a portion of that Act that provides:

4

> Any employee or person aggrieved by a violation of this chapter . . . may bring a civil action in a court of competent jurisdiction against the employer or other person violating this chapter . . . and, upon prevailing, shall be awarded reasonable attorneys' fees and costs and shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation, including, without limitation, the payment of any back wages unlawfully withheld, reinstatement in employment, and injunctive relief.

D.C. Code § 32-1308(a)(1) (emphases added). This statutory authority, he claims, renders his case more similar to United States v. First National City Bank, 379 U.S. 378 (1965), than to Grupo Mexicano. See Reply at 10. In First National, the Supreme Court did in fact uphold a preliminary injunction freezing the transfer of assets of a debtor held at a third-party bank in a suit brought by the United States to enforce a tax assessment and tax lien. Id. Citing a statutory provision that gave district courts the power to grant injunctions "necessary or appropriate for the enforcement of the internal revenues laws," the Court reasoned that preliminary relief was "appropriate to prevent [both] further dissipation of assets" and foreign taxpayers from avoiding tax obligations. Id. at 380, 385. Grupo Mexicano, moreover, distinguished First National's holding, rather than abrogating it. See 527 U.S. at 326.

Plaintiff, however, overlooks key details in making his two-sentence argument on this score. At the outset, the statute considered in First National was quite different from the D.C. Code provision that he cites here. The First National provision specifically provided that federal courts would have jurisdiction "to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 379 U.S. at 388 n.3 (Harlan, J., dissenting) (quoting 26 U.S.C. § 7402(a) (1964 ed.)) (emphases added). Here, the D.C. provision Strobos cites mentions only that injunctive relief may be issued after a Plaintiff first "prevail[s]" on his claim. See D.C. Code § 32-1308(a)(1) (emphasis added). Strobos makes

5

no effort to discuss the potential import of this language and points to no District of Columbia court that has issued the sort of relief he seeks <u>prior</u> to a valid judgment. To the extent that he hopes by this passing reference to go beyond <u>Grupo Mexicano</u>'s holding by invoking as well the potentially thorny issue of whether a federal court sitting in diversity may, under <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), expand its general equity powers based on the law of the forum State, the Court will not both construct and then consider such an argument for him. <u>See, e.g.</u>, <u>Grupo Mexicano</u>, 527 U.S. at 318 n.3 (declining to consider same where not raised by parties).

As the Supreme Court itself has explained, moreover, the situation that it faced in <u>First National</u> was distinguishable from the one it considered in <u>Grupo Mexicano</u> on other critical grounds, which Strobos fails to acknowledge do not apply to his request here. In particular, both in granting the preliminary injunction in <u>First National</u> and in later affirming the propriety of that decision, the Supreme Court noted that "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." 379 U.S. at 383 (quoting <u>Virginian Ry. Co. v. Sys. Fed'n</u>, 300 U.S. 515, 552 (1937)); <u>Grupo Mexicano</u>, 527 U.S. at 326. Federal courts have since found this to be a dispositive factor when considering the propriety of preliminary-injunctive relief in cases that do involve the public interest like <u>First National</u>, as opposed to private claims like those at issue in <u>Grupo Mexicano</u>. <u>See, e.g.</u>, <u>Rahman</u>, 198 F.3d at 494-97. No public interest is implicated by the private employment dispute at issue in this case, and it thus more closely fits in the <u>Grupo Mexicano</u> camp.

Strobos also seems unlikely on the current record to be able to solve this problem simply by amending his Complaint to assert an equitable claim to the assets he hopes to freeze. This is because he appears to have no <u>equitable interest</u> in any specific monies held by the Company.

6

Indeed, he is but one of several employees, along with other creditors, who might hope that Defendant will use sums – reimbursed to the Company via its settlement with the government – to pay an eventual legal judgment for monetary damages before any prospective insolvency. As a result, Strobos's case is distinct from the types of cases, like First National, where the Court has affirmed the authority of a federal court to enter an injunction "in aid of the recovery sought by the bill." Deckert v. Indep. Shares Corp., 311 U.S. 282, 289 (1940) (authorizing injunction freezing assets to aid in granting the ultimate equitable relief of rescission); see De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220 (1945) (confirming "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," but denying injunction to freeze assets where pending adjudication of the merits lay "wholly outside the issues in the suit"). Although he further claimed at oral argument and in his Complaint, moreover, that the funds were essentially earmarked for him as part of an earlier contract with the government, he does not point to evidence in the record to support such a claim, nor does he discuss how any such earmarking might give rise to an equitable interest or what impact the subsequent settlement might then have had on this interest.

The gravamen of Plaintiff's case, then, whether under a breach-of-contract theory or the D.C. statutory claim, is for simple money damages, not vindication of an equitable interest in any particular assets he seeks to encumber. See Deckert, 311 U.S. at 289 (describing "principal object" of suit as rescission and restitution); see also Rahman, 198 F.3d at 494-97 (discussing difference between equitable interest and money damages). Strobos's claim to these monies, as with the Grupo Mexicano plaintiffs, is simply one of a "general creditor (one without a judgment)[, who] ha[s] no cognizable interest, either at law or in equity, in the property of his debtor, and therefore c[an] not interfere with the debtor's use of that property" prior to obtaining

7

a judgment.  See 527 U.S. at 319-20.  As a result, Strobos fails to convince the Court that he is entitled to the "extraordinary remedy" of a preliminary injunction freezing Defendant's assets prior to a judgment.  Winter, 555 U.S. at 24.

    B.  Defendant's Motion

Defendant likewise falls short in asserting its two bases for an injunction.  It first demands that Plaintiff escrow funds in anticipation of a judgment against him.  As just discussed for Strobos, RxBio has similarly put forward no equitable claim to the money it seeks from Plaintiff.  Its Counsel admitted as much at the hearing.  In addition, it makes no real effort to demonstrate that Strobos is in any way likely to be insolvent.  Ellipso, 480 F.3d at 1160.

Defendant's second request, too, is built on a faulty premise.  RxBio contends that it will suffer irreparable harm if Strobos does not hand over documents he has retained because he expressly agreed it would be so harmed by a clause in his employment contract.  See Cross-Mot. at 18-19.  Such a provision, however, is "an insufficient prop" upon which to rest its cause here. Smith, Bucklin & Assos., Inc. v. Sonntag, 83 F.3d 476, 481 (D.C. Cir. 1996); see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1266 (10th Cir. 2004) (collecting cases for proposition that such a contract clause is insufficient to warrant preliminary injunction absent actual evidence of irreparable harm).  In its rather short briefing of the issue, moreover, RxBio fails to further describe the nature of the documents that it seeks or explain in any detail how disclosure of those documents might irreparably harm its business beyond a vague claim that they might contain "intellectual property" that is essential to its work.  See Cross-Mot. at 18-19.  The Company also makes no effort to show that Strobos is likely to release any documents of this sort to others, especially given the criminal penalties to which such an act might give rise by Defendant's own telling in its brief.  Id. (citing penalties).  Finally, Strobos has attested that

he has turned over any such proprietary information in his possession and stands willing to destroy any overlooked documents that the Company nevertheless reasonably identifies. See ECF 35-2 (Declaration of Jurriaan Strobos), ¶¶ 17-20.

In the absence of any showing, then, that RxBio has a likelihood of harm from his holding on to any such vague and as-yet unidentified documents a bit longer, the Court must conclude that Defendant fails to meet its burden for preliminary relief here.

### III.     Conclusion

The Court therefore ORDERS that:

1. Plaintiff's Motion for Preliminary Injunction is DENIED; and
2. Defendant's Cross-Motion for Preliminary Injunction is DENIED.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 27, 2016